INHABITANTS OF BUCKSPORT vs. INHABITANTS OF CUSHING.

HANCOCK.   Opinion February 22, 1879.

*Pauper supplies,—application for.   Stat. 1873, c. 119.*

Where one was arrested for crime, and, while in the lock-up, attempted suicide—being found in his cell lying upon the floor with his throat cut, and so weak from loss of blood that he could not speak more than a few words with sufficient distinctness to be understood—and medical attendance and such other necessaries as his condition required were furnished by the plaintiff town, before he was taken before a magistrate and committed to the county jail, the expense thus incurred cannot be regarded as pauper supplies.

Under act of 1873, c. 119, the supplies must be applied for and received, in case of adults of sound mind, with a "full knowledge" that they are pauper supplies ; and all care, whether medical or otherwise, is subject to this rule.

ON REPORT.

ACTION to recover for supplies and medical attendance and nursing furnished one James Stone, who, plaintiffs allege, was a pauper having his legal settlement in the town of Cushing.

The facts and questions at issue are fully recited in the opinion.

After the testimony on both sides was in, by consent of the parties, the case was reported, with the agreement that, "upon so

much of the evidence as is legally admissible, the full court, exercising jury powers, are to render such judgment as the law and evidence require."

*H. D. Hadlock & O. P. Cunningham,* for the plaintiffs, contended that Stat. 1873, c. 119, should have a reasonable construction. It was enacted to check the tendency to interrupt the acquisition of new pauper settlements by furnishing, on some slight pretext, supplies to a family about to gain a settlement in a new town. The reason of the law should not be lost sight of, for when this ceases the law itself ceases.

Stone's condition, when found by the overseer, bleeding from a gaping wound in the throat, his life fading with every beat of the heart, was a direct personal application to the overseers of Bucksport for relief, for necessary supplies and medical treatment.

The statute is silent as to how the application is to be made. The dumb may make the application by signs; the unconscious by the helpless condition in which found

Stone's utterly destitute, helpless and dying condition declared his wants to the overseers of the poor with more potency than could the utterances of a human tongue; on this application he must have relief or die from want of it. And, as in this case, in which all of the indications were that Stone was insane, they were justified in furnishing supplies on the presumption that he was of unsound mind, as the fact of an attempt at suicide is presumptive evidence of insanity. 1 Whar. & Stil. Med. Jur., §§ 637, 678.

*A. P. Gould & J. E. Moore,* for the defendants.

. WALTON, J. This action is to recover expenses incurred for the support of one James Stone, and the only question is whether Stone, at the time the support was furnished, can be regarded as a pauper.

The facts are these: Stone was charged with a criminal assault upon a woman, and was taken into custody by a police officer and put into the lock-up. He was found, shortly after, lying upon the floor of his cell with his throat cut. He had attempted to commit suicide; and was so weak from loss of blood that he could

not walk, nor stand, nor speak more than a few words with sufficient distinctness to be understood. Medical attendance, and such other necessaries as his condition required, were furnished at the expense of the plaintiff town, from June 21, 1876, to July 12, 1876, (twenty-one days) when he was taken before a magistrate, and committed to the county jail.

The question is whether the expense thus incurred can be regarded as expense incurred for the relief of a pauper. We think not. Adult persons of sound mind cannot be made paupers against their will. To constitute pauper supplies, under the laws of this state, the supplies must be applied for, or received with a "full knowledge" that they are pauper supplies; and all care, whether medical or otherwise, is subject to the same rule. Act 1873, c. 119.

The evidence satisfies us that Stone was an adult of sound mind, and that he did not apply for the aid furnished him. It is conceded that he did not. Were the supplies (in the language of the statute) received with a "full knowledge" that they were pauper supplies? A careful examination of the evidence compels us to answer this question in the negative. He undoubtedly knew that his wants were being supplied at the expense of the public; but the evidence fails to show that he knew, or suspected, that he was being supported as a pauper. He had reason to believe, and we cannot doubt that he did in fact believe, that he was being supdorted as a criminal, and not as a pauper. He had been taken into custody as a criminal; and, as soon as he was able, he was taken before a magistrate, and by him committed to the county jail. There is no evidence that he was ever told that he was discharged from his arrest, or that he was in fact discharged. . On the contrary, the evidence satisfies us that those having him in charge did not intend to release him; and that he was, by intent and in fact, a prisoner during all the time that the supplies sued for were being furnished him. He had reason to believe, and we cannot doubt that he did in fact believe, that he was being supported and cared for as a criminal, and not as a pauper. In other words, he did not know that the supplies he received were pauper supplies.

We do not mean to decide that supplies furnished one who is under arrest for crime can be regarded as pauper supplies, even if the prisoner does know that they are so intended. We think it may well be doubted whether persons can be made paupers, and subjected to the disabilities of pauperism, by being arrested for crime, and compelled to receive the supplies furnished them, or die for the want of them. There is but little opportunity for volition in such a case. But it will be time enough to determine that question when a case comes before us in which it necessarily arises. It does not arise in this case, because we are satisfied, as matter of fact, that the prisoner did not know that the supplies furnished him were intended as pauper supplies. As already stated, we think he had reason to believe, and that he did in fact believe, that the supplies were furnished him as supplies are ordinarily furnished persons who are under arrest for crime, at the public expense, but not as a pauper.

*Judgment for defendants.*

APPLETON, C. J., BARROWS, VIRGIN and LIBBEY, JJ., concurred.